IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEWIS LAKE,<br><br>    Plaintiff,<br><br>v.<br><br>HAYT, HAYT & LANDAU, P.L.;<br>ELTMAN LAW, P.C.,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:19-cv-02457-MHC-RDC |

# **NON-FINAL REPORT AND RECOMMENDATION**

Plaintiff Lewis Lake filed a Complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, in relation to a student loan debt. Pending before the Court is Defendant Hayt, Hayt & Landau, P.L.'s Motion for Final Summary Judgment with Memorandum of Law (Doc. 33), to which Plaintiff filed a response (Doc. 44), and Defendant filed a reply (Doc. 46).[1] For the reasons set forth below and pursuant to 28 U.S.C. § 636(b)(1)(B), the

---

[1] Defendant Eltman Law, P.C., ("Eltman") did not join in the motion or file an independent dispositive motion. However, when Defendant Hayt, Hayt & Landau, P.L. ("HHL") and Eltman are referenced together, they are referred to as "Defendants."

undersigned recommends that the Court **GRANT** the motion and enter summary judgment in favor of Defendant Hayt, Hayt & Landau, P.L.[2]

### I. Facts and Procedural History

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." *Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001). For the purposes of resolving a motion for summary judgment, the court may not consider "facts" unless they are unopposed or supported by citations to admissible evidence. *See* Fed. R. Civ. P. 56(c); LR 56.1(B), NDGa. The court must avoid weighing conflicting evidence or making credibility determinations, which is improper at summary judgment. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). Under this standard, the Court has elicited the following facts from Defendant's Statement of Undisputed Material Facts ("DSMF") (Doc. 33, § II), depositions submitted in support of the motion for

---

[2] Plaintiff served Defendant Eltman through its registered agent on June 3, 2019. (Doc. 4). As noted by Plaintiff and HHL, Eltman has not filed an answer or otherwise responded to the Complaint. (Doc. 9, ¶ I.a.). Plaintiff has not sought entry of default against Eltman or advanced the claims against this defendant. According to Mr. Breeden, the entire Elman firm, based in New Jersey, closed in 2018. (Breeden Dep., Doc. 36 at 13).

summary judgment,[3] and Plaintiff's Statement of Material Facts ("PSMF") (Doc. 44, § II). [4]

On July 16, 2007, Plaintiff incurred a student loan debt[5] from Sallie Mae Bank. (Lake Depo, Doc. 38 at 13). Plaintiff is a consumer, and Defendants are debt collection companies. (Doc. 1, ¶ 15). Plaintiff defaulted on the loan, and Eltman was retained to collect on the loan. *Id.*, ¶ 19–20. On May 23, 2017, Ralph Breeden, an attorney of the Eltman law firm, filed a collection action on behalf of Navient Credit Finance Corp. ("Navient") (Doc. 33 at ¶ 2) in the Laurens County Superior Court. (Doc. 2, ¶ 21). Eltman obtained default judgment against Plaintiff on September 29, 2017. *Id.*, ¶ 22. Plaintiff discovered the default judgment on June 8, 2018. *Id.* ¶ 24. On July 12, 2018, Plaintiff filed a motion to set aside the default judgment, which was granted on August 31, 2018. *Id.*

After the closure of Eltman Law, P.C., in 2018, Mr. Breeden was hired by HHL, and he filed a substitution of counsel as an HHL attorney for Navient. (Breeden Dep., Doc. 36 at 12–13, 20). On October 5, 2018, Mr. Breeden sent an

---

[3] *See* (Dana Stern Decl., Doc. 34; Breeden Dep., Doc. 36; Lake Dep., Doc. 38; Orovitz Depo\., Doc. 43).

[4] The Court notes that for the purposes of resolving a motion for summary judgment, "facts" may not be considered unless they are unopposed or supported by citations to admissible evidence. *See* Fed. R. Civ. P. 56(c); LR 56.1(B), NDGa.

[5] The loan was for his wife's education. *See* (Lake Dep., Doc. 38 at 13).

email to Ronald Daniels, Plaintiff's attorney. (Doc. 2, ¶ 26–27). The email read: "Good morning Mr. Daniels, I just found out about the order granting your motion to set aside judgment in the above referenced case. I am representing the Plaintiff. Do you mind forwarding me a copy along with any responsive pleadings that you may have filed?" (Doc. 33-1 at 2; Doc. 36-3 at 2). The bottom of the email stated: "This communication from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.*

The second communication at issue is an email dated April 16, 2019, from Mr. Breeden to Mr. Daniels: "Good morning. Discovery responses for this case are in route to you. Attached is one more document in response to the request for production." (Doc. 33-2 at 2; Doc. 36-4 at 2). Again, the end of the email stated: "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.* The email was sent to attorney Cliff R. Dorsen, at the email address, cdorsen@skarandfeagle.com, and to Mr. Daniels. (Doc. 33-2 at 2). Mr. Dorsen had no relationship with the parties or any involvement in the Navient case against Plaintiff.

On May 6, 2019, Mr. Dorsen replied by email to Mr. Breeden and Mr. Daniels, stating: "I believe that I was copied here by mistake." (Doc. 36-5 at 2).

Mr. Breeden testified that the intended recipient was Clifford Carlson, co-counsel for the Plaintiff. (Breeden Dep., Doc. 36, ¶ 11). According to Mr. Breeden,

Mr. Dorson was included on the email because his name auto-populated when Mr. Breeden was typing the email. *Id.*, ¶ 13. More importantly, the attachment to the email was encrypted and password-protected. *Id.*, ¶ 14. The password was provided to attorney Daniels by separate email but not to Mr. Dorsen. *Id.*, ¶¶ 16–17.

HHL maintains policies and procedures regarding FDCPA and communications. (Stern Decl., Doc. 34, ¶¶ 4, 6; Doc. 34-2 at 3–6). These include but are not limited to:

- Using a practice management system called Q-Law. (Stern Decl., Doc. 24-1 at 5; https://www.vertican.com/q-law/, last visited on August 16, 2020). Among other things, Q-law restricts outgoing emails on each client file so that only designated users can send emails and specific client requirements can be applied. (Stern. Decl. 34-1 at 5).

- Staff with access to outside emailing have signature blocks that include FDCPA-compliant language. *Id.*

- To send a validation notice in the form required by 15. U.S.C. § 1692g(a) prior to making contact with a party. (Stern Decl., Doc. 34, ¶ 3; Breen Dep., Doc. 36 at 39).

- Emails that contain social security numbers, account numbers, or other confidential information are set by secure or password protected email. (Doc. 34-1 at 5).

5

- Not to send any letters to third parties unless HHL receives written or verbal permission from the consumer directly. (Doc. 34-2 at 5).

- Not to communicate verbally with anyone other than the consumer without authorization from the consumer directly. *Id.*

- Every letter must contain the following statement: "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.*

- Not to include settlement demands in any letter that gives the consumer the right to dispute or request validation of the debt. *Id.*

Mr. Breeden testified that it was the Eltman firm's standard practice to send a 1692g notice to Plaintiff prior to filing a lawsuit, and he confirmed in the consumer's Q-law file that a 1692g notice had been sent. (Breeden Dep., Doc. 33 at 43, 64). According to Mr. Breeden, he first learned that Plaintiff had not received the notice when he received and reviewed the Complaint in this action. *Id.*, ¶ 38. At the direction of a supervisor, Mr. Breeden sent a 1692g notice to Plaintiff on June 11, 2019. *Id.*, ¶ 23. Plaintiff does not recall receiving a copy of the June 11, 2019. (Lake Dep., (Doc. 38 at 23).

On May 30, 2019, Plaintiff filed a Complaint alleging violations of the FDCPA. Defendants filed the instant motion for summary judgment (Doc. 33).

Plaintiff filed a response in opposition (Doc. 44), to which Defendant filed a reply (Doc. 46). The matter is now ripe for consideration.

## II.  Analysis

**A.  Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). The responsibility includes identifying each claim for which summary judgment is sought and the evidence that it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 323; *Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011).

When a party moves for summary judgment on all claims, the nonmovant must respond by, at the very least, raising any and all arguments or defenses that preclude judgment for the moving party. *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds

alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Failure to respond to arguments seeking summary judgment for a claim constitutes an abandonment of the issue and warrants entry of summary judgment on that claim. *Cockrell v. Baruah*, No 1:06-cv-600-ECS, 2008 WL 11333465, at *6 (N.D. Ga. Dec. 22, 2008) (citing *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005)); *Burnett v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004).

If a party raises an argument, it must also cite to evidence in the record, and the court need not independently consider evidence in the record. Fed. R. Civ. P. 56(c)(1), (3). The evidence provided must not consist of mere conclusions and unsupported statements. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *see also Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000) (stating that a "bare and self-serving allegation where [the plaintiff] had no personal knowledge" was inadequate to carry the plaintiff's burden at summary judgment). Further, "[a] 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 575 F.3d 1158, 1165 (11th Cir. 2009) (citations omitted).

**B. FDCPA Standard**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To this end, the FDCPA imposes affirmative requirements on debt collectors and prohibits a range of debt-collection practices. 15 U.S.C. §§ 1692b–1692j; *Rotkiske v. Klemm*, 140 S. Ct. 355, 357 (2019). To state a claim for relief under the FDCPA, the plaintiff must demonstrate that (1) he was "the object of collection activity arising from a consumer debt," (2) Defendant "is a debt collector as defined by the statute," and (3) Defendant "has engaged in an act or omission prohibited by the FDCPA." *Helman v. Bank of Am.*, 685 F. App'x 723, 726 (11th Cir. 2017).

"The FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector." *Vinson v. N. Star Capital Acquisitions, LLC*, No. 1:10-CV-1760-HLM, 2011 WL 13319719, at *3 (N.D. Ga. Feb. 11, 2011) (quoting *Rivera v. Amalgamated Debt Collection Servs., Inc.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006)). A single violation is sufficient to establish civil liability. *Vinson*, 2011 WL 13319719, at *3 (citing *Rivera*, 462 F. Supp. 2d at 1227). The courts construe consumer protection statutes like the FDCPA

"broadly in favor of consumers." *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016). The courts apply the least sophisticated consumer standard to determine if a communication violates the FDCPA. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). Notwithstanding these dictates, a debt collector may raise a bona fide error defense:

> (c) Intent
>
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

In this case, Plaintiff alleges that HHL (1) failed to provide a debt validation notice within five days of the October 5, 2018, email as required by 15 U.S.C. § 1692g(a), and (2) through its email dated April 16, 2019, communicated with a third party in connection with the collection of a debt without the prior consent of the consumer in violation of 15 U.S.C. § 1692c. (Compl., Doc. 1, ¶¶ 39–40).

<u>1. October 5, 2018, Email</u>

Defendant does not dispute that it is a debt collector and that it did not send the required disclosures under 15 U.S.C. § 1692g until after this lawsuit was filed. This section requires the debt collector to, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, . . .

10

send the consumer a written notice" containing information about the debt and advising the consumer about debt dispute, validation, and verification procedures. 15 U.S.C. §§ 1692g(a)(1)–(5), 1692g(b); *Owens*, 806 F. App'x at 857 (quoting 15 U.S.C. § 1692g(a)(1)–5)). The sufficiency of the contents of Defendant's 1692g notice is not at issue; instead, the Court must determine whether it was untimely because it was not sent within the five days of the October 5, 2018, email.

Under the FDCPA, the definition of communication is very broad. *Caceres*, 755 F.3d at 1302. "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(1)(2). Defendant does not appear to dispute that its contact through Plaintiff's counsel was indirect communication with the consumer that is covered by the FDCPA. *See also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1301–03 (11th Cir. 2015).

Defendant argues that the October 5, 2018, email was not a communication "in connection with the collection of any debt" that would trigger the notice requirement under section 1692g(a). Plaintiff contends that Defendant's FDCPA disclaimer, "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose," satisfies the requirement that Defendant's email was made "in connection with the collection of any debt." *See* (Doc. 36-3 at 2). However, the use of such boilerplate FDCPA

language does not automatically trigger the 1692g(a) notice requirement. *See Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 968 (11th Cir. 2019) (citing *LeBlanc*, 601 F.3d at 1194). This language is a required disclosure under 15 U.S.C. § 1692e(11). *Robinson v. Santander Consumer USA Inc.*, No. 1:11-CV-00230-CAP-LTW, 2011 WL 13319344, at *4 (N.D. Ga. July 25, 2011), *adopted by* No. 1:11-CV-230-CAP, 2011 WL 13319414 (N.D. Ga. Aug. 17, 2011). Defendant's effort to comply with the FDCPA does not necessarily convert this email into a communication "in connection with the collection of any debt." *Robinson*, 2011 WL 13319344, at *4 (citing *Thompson v. BAC Home Loan Servicing*, No. 2:09-CV-311-TS, 2010 WL 1286747, at *5 (N.D. Ind. Mar. 26, 2010)). Additionally, under HHL's policies and procedures, the FDCPA-compliant language was included with the signature block of its staff with outgoing email access. (Doc. 34-1 at 5).

In determining whether the communication falls within the FDCPA as debt collection activity, a court must conduct "a 'commonsense inquiry' based on all factors surrounding the communication, including the 'purpose and context' of the communication." *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1325 (S.D. Fla. 2014) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384–85 (7th Cir. 2010)). The court must also examine the language used in the communication in question, specifically statements that demand payment or indicate that additional fees will be assessed if payment is not received. *Owens*, 806 F. App'x

at 856. *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2303 (2017). If a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the FDCPA. *See Caceres*, 755 F.3d at 1302 (citing *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998)).

The communication here from Mr. Breeden to Mr. Daniels as counsel for the parties relates to the procedural status and pleadings in the underlying state court action. *See* (Doc. 33-1 at 2). The email does not allege that Plaintiff owes a debt or is in default; it does not demand payment; it does not discuss terms of payment or threaten further collection proceedings. It does not contain any collection purpose but instead concerns documents filed in the course of litigation. Even if this email is an indirect communication to the consumer, the plain language and context of the communication indicates that it should not be considered "in connection with the collection of any debt." *See Farquharson*, 664 F. App'x at 801; *Caceres*, 755 F.3d at 1302 (adopting the reasoning in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012)).

Because Plaintiff has failed to demonstrate that the October 5, 2018, email was made "in connection with the collection of any debt," it did not trigger the five-day debt validation notice under 15 U.S.C. § 1692g. Therefore, Plaintiff's claim of

an FDCPA violation based on this email is unsupported by the evidence, and Defendant is entitled to summary judgment on this claim.

2. April 16, 2019, email

Plaintiff alleges that "Defendant HHL violated 15 U.S.C. § 1692c by communicating with a third party in connection with the collection of a debt without prior consent of the consumer in the April 16, 2019 email." (Compl. Doc. 1, ¶ 40). There is no dispute that an attorney unrelated to this action, Cliff R. Dorsen, was copied on the email without Plaintiff's consent. (Doc. 36-5 at 1–2).

> The FDCPA restricts debt collectors' communications with third parties:
>
> without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, *in connection with the collection of any debt*, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c. As with section 1692g, the plain language of the statute makes section 1692c applicable only to communications made "in connection with the collection of any debt." As with the October 5, 2018, email, the April 16, 2019, email was directed at Plaintiff's counsel in relation to ongoing litigation, not toward the collection of the debt. The email makes no reference to the debt, demand for payment, terms of payment, or additional fees or further collection activity. On its face, this email fails to support a claim for improper communications with third

parties under the FDCPA.[6] There is no genuine issue of material fact, and Defendant has established entitlement to judgment as a matter of law. Accordingly, summary judgment in Defendant's favor is also appropriate on Plaintiff's FDCPA claim based on the April 16, 2019, email.

### III. CONCLUSION

For the reasons stated and pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned **RECOMMENDS** that the Defendant Hayt, Hayt & Landau, P.L.'s Motion for Final Summary Judgment (Doc. 33) be **GRANTED**. It is further recommended that, upon the Court's ruling on the instant motion to dismiss, this matter be referred to the undersigned to address the claims raised against Defendant Eltman Law, P.C.

IT IS SO **RECOMMENDED** on this 17th day of August 2020.

_____
REGINA D. CANNON
United States Magistrate Judge

---

[6] Defendant has raised a bona fide error defense under 15 U.S.C. § 1692k, which provides that a debt collector will not be held liable if it can show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (Doc. 5 at 6); *see also Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009). This defense is moot, since Plaintiff is unable to establish that the email was a debt collection activity. However, should the District Judge reject this reasoning and must consider the bona fide error defense, the undersigned will provide a Supplemental Report and Recommendation.